IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANDREA NICOLE GREEN,

     Plaintiff,

v.

                              CIVIL ACTION NO.
                              1:17-CV-337-WSD-LTW

ADCO INTERNATIONAL PLASTICS
CORPORATION, ROBERT ADAM,
and LYNN AMY ADAM,

     Defendants.

## MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

This case is presently before the Court on Defendants ADCO International Plastics Corporation (ADCO), Robert Adam, and Lynn Amy Adam's (together "Defendants") Motion to Dismiss Plaintiff's Complaint (Doc. 7), Motion to Strike Paragraphs 32, 34, 48, 52, and 58 of Plaintiff's Complaint (Doc. 8), and Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 23).  Also before the Court is Plaintiff Andrea Nicole Green's Motion to Strike Defendants' Attachment of Extraneous Evidence (Doc. 12), Plaintiff's Second Motion to Strike Defendants' Attachment of Extraneous Evidence (Doc. 27), and Plaintiff's Motion to File the Attached Sur-Reply in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 32).  For the reasons outlined below, this Court **RECOMMENDS** that Defendants' Initial Motion to Dismiss Plaintiff's Complaint (Doc. 7), Defendants'

Motion to Strike Paragraphs 32, 34, 48, 52, and 58 of Plaintiff's Complaint (Doc. 8), and Plaintiff's Motion to Strike Defendants' Attachment of Extraneous Evidence (Doc. 12) be **DEEMED MOOT**.  Plaintiff's subsequent Motion to Strike Defendants' Attachment of Extraneous Evidence and Motion for Leave to File a Sur-Reply are **DENIED**.  (Doc. 27, 32).  This Court also **RECOMMENDS** that Defendants' Second Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.  (Doc. 23).

**DEFENDANTS' MOTION TO DISMISS**

**I.    Procedural History**

On January 29, 2017, Plaintiff filed the instant lawsuit, alleging Defendants discriminated against her on the basis of her race, gender, and disability when  they terminated her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq. ("the ADA").  Plaintiff also alleged violations of the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff ("GINA"), the Equal Pay Act of 1963, 29 U.S.C. § 206, the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 ("COBRA"), and O.C.G.A. § 34-5-3.

Defendants moved to dismiss Plaintiff's Complaint on March 31, 2017.  (Doc. 7). Defendants also moved to strike certain paragraphs of Plaintiff's Complaint which they maintained were immaterial, impertinent, or scandalous for the sole purpose of prejudicing Defendant Robert Adam.  (Doc. 8).  Plaintiff moved to strike exhibits

attached to Defendants' Motion to Dismiss on April 14, 2017 (Doc. 12), and filed a Response to Defendants' Motion to Dismiss (Doc. 14).  One week later, Plaintiff filed her First Amended Complaint. (Doc. 16).  Defendants, in their Reply in support of their Motion to Dismiss and in support of their Motion to Strike certain paragraphs of Plaintiff's Complaint, pointed out that in light of Plaintiff's Amended Complaint, the Amended Complaint became the operative Complaint and that Defendants' Motion to Dismiss and Motion to Strike should be deemed moot.  Defendants further pointed out that Plaintiff's Motion to Strike exhibits attached to Defendants' Motion to Dismiss should also be deemed moot.  Plaintiff did not file a Reply in support of her Motion to Strike.  Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint on May 5, 2017.  (Doc. 23).  Given that Plaintiff has filed an Amended Complaint and that Defendants agree that their Motion to Dismiss and Motion to Strike Plaintiff's original Complaint is now moot, this Court **RECOMMENDS** that Defendants' original Motion to Dismiss and Motion to Strike Plaintiff's original Complaint be **DEEMED MOOT**. (Docs. 7, 8).  Likewise, because Defendants subsequently filed a Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff's Motion to Strike certain exhibits attached to Defendants' original Motion to Dismiss also should be **DEEMED MOOT**.  (Doc. 12).

3

## II.   <u>Allegations of Plaintiff's Amended Complaint</u>

As noted, Plaintiff filed her Amended Complaint on April 21, 2017.  (Doc. 16).
Plaintiff avers in her Amended Complaint that Defendant ADCO hired her to work as
Finance/Human Resources Manager, and she worked in this capacity for almost a year.
(Am. Compl. ¶¶ 8-10).  Plaintiff reported to Defendant Robert Adam as well as Dan
DeYoung.  (Am. Compl. ¶ 12).  Plaintiff states at the time of hire, Defendant Robert
Adam told her that he should not hire her because she was the "kind that would sue
[him]."  (Am. Compl. ¶ 22).  Plaintiff understood Defendant Adam's statement to mean
that there were two kinds of African-Americans, "the kind who sue their employers and
the kind who didn't."  (Am. Compl. ¶ 23).

Plaintiff contends that wages paid to employees did not reflect their length of
tenure or quality of work, but were instead based on the employee's sex or race.  (Am.
Compl. ¶ 20).  In support, Plaintiff avers that a black female management employee
made $620 per week while the two men who reported to her earned $1,350 per week and
$1,750 per week.  (Am. Compl. ¶ 25).  When Plaintiff advocated for underpaid female
staff member Teresa Grizzell, who made less than her male comparators, Defendant
Robert Adam told her that Ms. Grizzell "should be glad she has a job."  (Am. Compl.
¶ 26).  Plaintiff also complains that she initially received a $5,000 bonus, but Defendant
Robert Adam took the bonus back and replaced it with a $400 bonus.  (Am. Compl.
¶¶ 28-29).  Meanwhile, white, male members of the management team made $6,000,
$1,700, and $1,200 bonuses.  (Am. Compl. ¶ 29).  Plaintiff avers that when a certain

4

female employee requested a commission that was part of the compensation package to which the employee and Robert Adam agreed upon during the employee's hiring, Robert Adam terminated her employment for insubordination.  (Am. Compl. ¶ 32).  Ms. Grizzell filled the position during the interim, but although Defendant Robert Adam agreed that Grizzell had performed the position well, he did not want Grizzell to have the position because "she smokes and her breath stinks," "she is dumb," and she did "not always use proper grammar." (Am. Compl. ¶ 33).  Instead, Robert Adam hired another female through a temporary service who was beautiful, "dressed provocatively," and had fresh breath.  (Am. Compl. ¶ 35).  When the temporary employee sought to be hired at the rate of $70,000 per year, Defendant Robert Adam became angry that she should demand such a high rate of pay and told Plaintiff to "get rid of her." (Am. Compl. ¶¶ 36-38).  Plaintiff also states that Defendant Robert Adam has referred to women as "cackling hens," complained that all women do is "bitch, bitch, bitch," and remarked that women "keep a lot of shit stirred up."  (Am. Compl. ¶ 39).

Plaintiff states that in July 2015, while she was scheduled to be out of work to care for her granddaughter who was recovering from surgery, another employee advised Plaintiff that "Defendants" told ADCO employees that Plaintiff was stealing from the company by making unauthorized purchases and keeping such purchases for her personal use and that Defendant Robert Adam told employees that Plaintiff would not be with ADCO much longer.  (Am. Compl. ¶ 44).  Some employees were aware, however, that Plaintiff had been authorized to make certain purchases on behalf of the

company for her personal use to assist her in performing her job.  (Am. Compl. ¶ 62).

Before Plaintiff returned to work and returned the items to ADCO, she suffered "a heart-related event" and was hospitalized.  (Am. Compl. ¶¶ 47, 62).  Plaintiff's physician correlated her illness with stress suffered at work and advised her to take some time off.  (Am. Compl. ¶ 48).  Plaintiff states that while she was on leave, Defendants slanderously accused her of stealing, terminated her, and replaced her with a white, female employee.  (Am. Compl. ¶ 62).  Plaintiff states that when a white male had a stroke, "Defendants treated him much better."  (Am. Compl. ¶ 51).

When Plaintiff attempted to make a claim against her employer-provided disability insurance policy, she discovered that the insurance had never gone into effect and that the premiums were not being removed from her paycheck.  (Am. Compl. ¶¶ 52-53).  Plaintiff maintains that Defendant Robert Adam was responsible for entering the deductions into the payroll system, but did not do so.  (Am. Compl. ¶ 53).  When Plaintiff brought the situation to Defendant Robert Adam's attention, he instructed her to "follow up on her own."  (Am. Compl. ¶ 54).  Plaintiff obtained the necessary paperwork from the insurer and gave the portion of the paperwork meant for the employer to Defendant Robert Adam.  (Am. Compl. ¶ 56).  The portion of the paperwork given to Robert Adam excluded medical information about Plaintiff.  (Am. Compl. ¶ 56).  Defendant Robert Adam demanded the remainder of the application, but Plaintiff refused to show it to him on the grounds that the information in the remainder of the application included information protected by the Genetic Information

Nondiscrimination Act of 2008.  (Am. Compl. ¶ 57).  Although Plaintiff requested that Defendant Robert Adam complete the short-term disability paperwork on several occasions, Defendant Robert Adam did not do so.  (Am. Compl. ¶ 61).

Even though Defendants never criticized Plaintiff about her work or included any discipline in her personnel file, Defendant Robert Adam emailed Plaintiff a termination letter on July 27, 2015.  (Am. Compl. ¶¶ 11, 66).  Therein, Adam explained that Plaintiff had been terminated because the CPA "found several mistakes and omissions" and that she failed to submit the proper paperwork to ensure that deductions for medical benefits had been taken from her paycheck.  (Am. Compl. ¶ 66).  When Defendant Robert Adam terminated Plaintiff, he offered her a severance agreement, which as part of its terms, required that she release her claims against ADCO.  (Am. Compl. ¶ 65).  According to Plaintiff, such agreements were not imposed on white, male employees who were terminated.  (Am. Compl. ¶ 68).  Plaintiff states that she attempted to negotiate the terms of the agreement but she never reached a meeting of the minds with ADCO.  (Am. Compl. ¶ 69).

Plaintiff subsequently sought COBRA benefits in order to extend her medical benefits.  (Am. Compl. ¶ 70).  Defendant ADCO denied Plaintiff COBRA coverage on the grounds that she had been terminated for "gross misconduct."  (Am. Compl. ¶ 75).  Defendant Robert Adam later asserted that Plaintiff had enrolled herself into medical benefits in April of 2015 without alerting him to start the payroll deductions.  (Am. Compl. ¶ 79).  Plaintiff avers that according to her written offer of employment, she was

entitled to medical benefits after ninety days of employment, and that Defendant Robert Adam was aware that she was receiving such benefits because when she reported her difficulty with obtaining insurance benefits, he told her to handle it herself. (Am. Compl. ¶¶ 81-83). Caucasian employees who left the company were extended COBRA benefits. (Am. Compl. ¶ 71).

Plaintiff argues in Count 1 that Defendant ADCO discriminated against her on the basis of her race and her gender in violation of Title VII when ADCO paid her less than her Caucasian male counterparts and terminated her. Plaintiff further contends that ADCO's pay practices disparately impact females and minority employees. (Am. Compl. ¶ 101). Plaintiff contends in Count 2 that ADCO discriminated against her on the basis of her perceived disability when ADCO terminated her while she was hospitalized for a cardiac incident and denied her a reasonable accommodation of time off and short term disability benefits. (Am. Compl. ¶ 115). Plaintiff asserts in Count 3 that ADCO violated GINA when Robert Adam conditioned his completion of her short term disability form on her providing him with her genetic information. (Am. Compl. ¶¶ 122-23). Plaintiff contends in Count 4 that Defendants discriminated against her on the basis of her race in violation of Section 1981 when Defendants paid her less than her Caucasian counterparts and terminated her. (Am. Compl. 126-31). Plaintiff further contends in Count 4 that Defendants violated the Fair Labor Standards Act when Defendants willfully failed to pay her lawfully earned wages and paid her male counterparts more. (Am. Compl. ¶ 137). In Count 5, Plaintiff argues ADCO caused

COBRA benefits to be withheld from her while she was under a doctor's care because ADCO falsely informed the benefits administrator that Plaintiff was terminated for gross misconduct and ineligible for COBRA benefits. (Am. Compl. ¶¶ 141-42). In Count 6, Plaintiff contends that Defendants violated O.C.G.A. § 34-5-3 when they paid her at a lower rate than her male counterparts even though they performed work which required equal skill, effort, and responsibility under similar working conditions. (Am. Compl. ¶ 147-49). Plaintiff argues in Count 7, that Defendants discriminated against her on the basis of her disability in violation of O.C.G.A. 34-6A-4 when they terminated her while she was on medical leave due to her disability. (Am. Compl. ¶ 153). Finally, in Count 8, Plaintiff argues Defendants intentionally inflicted emotional distress upon her when they discriminated against her, did not address her complaints of unequal treatment between employees of different races and different genders, and encouraged her to guess at numbers necessary for financial reports, placing her in jeopardy of offending criminal laws.

In Defendants' Motion to Dismiss, they argue Plaintiff's claims arising out of her employment should be dismissed because she executed a severance agreement agreeing to release Defendants from any potential claims she may have arising out of her employment. Defendants further contend that (1) Plaintiff's claims pursuant to O.C.G.A. § 34-5-3 (Georgia's equal pay statute) and O.C.G.A. 34-6A-2 (Georgia's disability discrimination statute) should be dismissed because they have not been filed within their respective limitations periods; (2) Plaintiff fails to state a GINA claim

because the allegations of her Amended Complaint do not suggest that ADCO requested her genetic information and she failed to file a timely charge of discrimination raising the issues pursuant to GINA; (3) Plaintiff fails to state an ADA claim because she failed allege sufficient facts showing that she was capable of performing the essential functions of her position, that she suffered from a disability, or that ADCO perceived her as disabled; (4) Plaintiff fails to state a claim for intentional infliction of emotional distress because she fails to allege facts demonstrating that Defendants' actions were extreme or outrageous; and (5) Plaintiff fails to state a Title VII claim because she fails to plead facts tending to show that an individual from outside of her protected racial and gender class was treated more favorably than she was.

## II.   LEGAL ANALYSIS

### A.   Rule 12(b)(6) Motion to Dismiss Standard

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief or it is based on an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford Cty., 960 F.2d 1002, 1009-10 (11th Cir. 1992). A Rule 12(b)(6) motion to dismiss also tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest required elements of the claim.  Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)).

### B.  Whether the Settlement and Release Agreement Bars Plaintiff's Claims

Defendants argue Plaintiff's Amended Complaint should be dismissed because Plaintiff waived each of her claims against them when she signed a severance agreement in which she agreed to release and hold them harmless for any claims arising out of her employment and termination in exchange for one week of severance pay, forgiveness of a $4,000 loan ADCO gave her, and forbearance of ADCO's right to seek reimbursement of payments for benefits provided on Plaintiff's behalf without ADCO being notified.  Defendants attach the purported severance agreement to their Motion to Dismiss as Exhibit A, and argue that the Court should consider it even though it is a matter outside the pleadings because it is central to Plaintiff's claim, referenced in the Amended Complaint, and its authenticity is unchallenged.  (Ex. A, Doc. 23-2, at 1).  In response, Plaintiff filed her Motion to Strike Defendants' Attachment of Extraneous Evidence.  (Doc. 27).  In Plaintiff's Motion to Strike Defendants' Attachment of Extraneous Evidence and in her brief in opposition to Defendants' Motion to Dismiss,

Plaintiff contends that this Court should strike the purported severance agreement Defendants attach as Exhibit A and should not consider it because it is a matter outside the pleadings, it is not central to her Amended Complaint, and it is not a valid agreement.  Plaintiff further maintains that the agreement is plagued with formation issues: (1) it is barred by the statute of frauds; (2) Plaintiff, who was under the influence of medication, did not have the capacity to enter into a contract; (3) the parties did not assent to be bound by the purported severance agreement because Plaintiff rejected ADCO's initial offer when she did not return an executed agreement to ADCO during the time period called for by the document, she offered up new terms, and Defendants never signed the proposed agreement, indicating their acceptance to her new terms; (4) she did not knowingly and voluntarily enter into the contract because Defendants did not give her the required amount of time to review the document under the ADEA and did not inform her that the agreement may prevent her from filing an action against them for future discrimination or that she is free to assist a governmental agency in an investigation as required by Title VII; and (5) any alleged consideration for the purported agreement was illusory because she was already entitled to ADCO's proposed consideration under the contract.

As preliminary matters, Plaintiff has moved for leave to file a sur-reply (Doc. 32) and has moved to strike evidence Defendants attached to the Motion to Dismiss (Doc. 27).  First, Plaintiff argues in her request for leave to file a sur-reply that she should be permitted to file a sur-reply because on reply, Defendants "asserted several points that

require clarification by the Plaintiff and the Plaintiff seeks a fair opportunity to address said points." Local Rule 56.1A provides that "the parties shall not be permitted to file supplemental briefs and materials, with the exception of a reply by the movant, except upon order of the court." Local Rule 7.1 gives non-movants the opportunity to file *one* response in opposition to motions. LR 7.1B, NDGa. Additionally, the Court cannot allow such sur-replies as a regular practice because to do so "would put the court in the position of refereeing an endless volley of briefs." Garrison v. NE Ga. Med. Ctr., 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999). This Court finds that a sur-reply is not justified by the nature of Defendants' Reply. Accordingly, Plaintiff's request for a sur-reply is **DENIED**. (Doc. 32).

Second, this Court will consider Plaintiff's Motion to Strike (Doc. 27) not as a motion to strike, but rather an objection to the Court's consideration of the purported severance agreement attached as Defendants' Exhibit A. Although Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter, the rule only provides for striking materials which are included in a pleading. Nelson v. Jackson, No. 1:14-CV-02851-ELR-JFK, 2016 WL 9454420, at *1 (N.D. Ga. May 18, 2016). "Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." Nelson, 2016 WL 9454420, at *1; Jordan v. Cobb Cty., 227 F. Supp. 2d 1322, 1346-47 (N.D. Ga. 2001). Accordingly, because a Motion to Strike is not the appropriate vehicle for challenging the consideration of evidence, Plaintiff's

Motion to Strike  Defendants' Attachment of Extraneous Evidence is **DENIED**.  (Doc. 27).  Instead, Plaintiff's Motion to Strike will be treated as an objection to Defendants' evidence and will be considered in conjunction with Defendants' Motion to Dismiss below.  Pinkerton & Laws Co. v. Roadway Express, Inc., 650 F. Supp. 1138, 1141 (N.D. Ga. 1986)

That being said, this Court finds that the purported severance agreement attached as Exhibit A to the Motion to Dismiss should not be considered in connection with Defendants' Motion to Dismiss.  When evaluating a motion to dismiss, the Court may consider only "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed."  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004); Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir.1997) (holding that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal"); see also Smith v. Miami-Dade Cty., 621 F. App'x 955, 960 n.2 (11th Cir. 2015) (explaining that settlement agreement was properly considered on motion to dismiss because plaintiff alleged in her complaint that her retaliation claims stemmed from the settlement agreement and that the settlement agreement did not bar her discrimination suit).  The Court may, in its discretion, consider extrinsic documents which are central to the plaintiff's claims on a motion to dismiss if the plaintiff does not challenge the authenticity of the document.  Speaker v. U.S. Dep't of Health & Human

Servs. Ctrs. For Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010)); Jones v. Auto. Ins. Co. of Hartford, Conn., 917 F.2d 1528, 1532 (11th Cir. 1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the Court."); Prop. Mgmt. & Inv. v. Lewis, 752 F.2d 599, 604 (11th Cir. 1985) (same); N. Brevard Hosp. Dist. v. McKesson Techs., No. 6:16-CV-637-Orl-40DCI, 2017 WL 951672, at *3 (M.D. Fla. Mar. 10, 2017) (explaining that it is in the court's discretion whether to consider a document attached to the defendant's motion to dismiss which is central to the plaintiff's claims); Porter Capital Corp. v. Johns Manville, Inc., No. 6:16-CV-637-Orl-40DCI, 2013 WL 3153519, at *2 (N.D. Ala. June 14, 2013) (same); Citizens State Bank v. Dixie Cty., No. 1:10-CV-00224-SPM-GRJ, 2011 WL 1335805, at *3 (N.D. Fla. Apr. 7, 2011) (same).  When determining whether an extrinsic document is central to the plaintiff's claim, the Court considers whether the document is a necessary part of the plaintiff's effort to make out a claim.  Fin'l Sec. Assur., Inc., 500 F.3d 1276, 1284 (11th Cir. 2007) (noting that document was central to claim because "plaintiffs unquestionably would have had to offer a copy of the [document] to prove their case"); Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

In this Court's view, the present case does not present appropriate circumstances for the Court's exercise of discretion to review of the purported severance agreement in connection with Defendants' Motion to Dismiss.  Even if the Court were to review the

15

purported severance agreement, as discussed below, there are not enough pertinent factual allegations within the Amended Complaint to evaluate the issues raised by Defendants' Motion with regard to Plaintiff's alleged release of her claims. The fact that the Amended Complaint does not include extensive discussion of the circumstances surrounding the purported severance agreement is not held against the Plaintiff. Defendants' argument that Plaintiff had released all of her claims arising out of her employment is an affirmative defense; thus, Plaintiff was not required to plead facts in her Amended Complaint to defeat such a defense. Perry v. Merit Sys. Prot. Bd., 137 S. Ct. 1975, 1987 n.9 (2017) (explaining that "in civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading"); Rakip v. Paradise Awnings Corp., 514 F. App'x 917, 920 (11th Cir. 2013) (noting that release is an affirmative defense); Watts v. City of Opelika, No. 3:13-CV-742-MHT-PWG, 2015 WL 7450407, at *8 (M.D. Ala. Aug. 26, 2015) (noting that applicability of a release agreement is an affirmative defense and party seeking to enforce such an agreement bears the burden of proof); Fed. R. Civ. P. 8(c)(1). Accordingly, Plaintiff's claims arising out of her employment may only be dismissed if it is clear on the face of Plaintiff's Amended Complaint that she released all of her claims, unless the court were to convert Defendants' Motion to a summary judgment motion or otherwise consider matters extraneous to the pleadings in this case. See, e.g., Stephens v. Time Customer Serv., Inc., No. 8:17-CV-1338-T-33AEP, 2017 WL 3608275, at *3 (M.D. Fla. Aug. 22, 2017).

Consideration of matters extraneous to the pleadings would not be appropriate under the circumstances because much of the information Plaintiff would need to defeat Defendants' arguments regarding the alleged severance agreement would also include matters outside the pleadings and discovery has not yet begun in this case.  Here, Plaintiff asserts numerous arguments in support of her position that the purported severance agreement does not bar her claims.  Many of Plaintiff's arguments would require consideration of extraneous facts which have not been pled in her Amended Complaint.  For instance, Plaintiff alleges she did not have the capacity to enter into an agreement because she was hospitalized and was under the influence of medication.  (Doc. 27-1, at 17).  There are not many facts within Plaintiff's Amended Complaint describing her capacity to enter into an agreement.

Additionally, Plaintiff challenges the formation of the contract, and maintains that an agreement was never formed because she did not accept ADCO's offer in the manner in which ADCO required for acceptance of the offer, that is within seven days.  (See Def.'s Ex. A (stating that "[y]ou may take up to 7 days to decide whether you wish to enter into this agreement")).  Thus, Plaintiff urges any acceptance of the agreement after the seven-day period for acceptance became a counteroffer which Plaintiff claims that ADCO never accepted, because ADCO never signed the agreement.  Additionally, Plaintiff asserts that Defendants never performed their obligations as outlined in the document.  The manner in which the release agreement was allegedly formed is not discussed in any great detail in the Amended Complaint and is a matter outside the

17

pleading potentially subject to substantial dispute between the parties.

Yet, the formation issues Plaintiff raises are key to the issue as to whether there is an enforceable release agreement.  A valid contract requires (1) parties able to contract; (2) consideration moving to the contract; (3) the parties' assent to the terms of the contract; and (4) a "subject matter upon which the contract can operate." Graham v. HHC St. Simons, Inc., 322 Ga. App. 693, 695 (2013).  As Plaintiff argues, a contract will not be enforceable if there is no meeting of the minds.  Graham, 322 Ga. App. at 695-96.  "It is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense." Graham, 322 Ga. App. at 696-97; Powerhouse Custom Homes, Inc. v. 84 Lumber Co., L.P., 307 Ga. App. 605, 607 (2011).  In making the determination of whether there has been a meeting of the minds, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant and courts are free to consider extrinsic evidence.  Graham, 322 Ga. App. at 695-96.

Here, Plaintiff argues there was no meeting of the minds because she did not accept the purported agreement within the time period delineated in the document for acceptance, and attempted to negotiate terms more favorable to her, which Defendants did not accept.  Plaintiff further maintains that Defendants did not accept her offer by performance because neither party has acted according to the suggested terms of the purported severance agreement.  In deciding whether there was a meeting of the minds, "[a]n answer to an offer will not amount to an acceptance, so as to result in a contract,

unless it is unconditional and identical with the terms of the offer." Powerhouse Custom Homes, 307 Ga. App. at 607.   Thus, "[t]o constitute a contract, the offer must be accepted unequivocally and without variance of any sort." Powerhouse Custom Homes, 307 Ga. App. at 607.   An offer "must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act." Hansen v. Doan, 320 Ga. App. 609, 612 (2013). Thus, if a purported acceptance of a settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance. Torres v. Elkin, 317 Ga. App. 135, 140-41 (2012).   To that end, "if a contract requires that an offer be accepted within a stated time, no contract is formed when the offer is accepted after the state time, unless the late acceptance became a counter offer which was then accepted by the original offeror." Costello Indus. v. Eagle Grooving, Inc., 308 Ga. App. 254, 255 (2011); Century 21 Pinetree Props., Inc. v. Cason, 220 Ga. App. 355, 357 (1996); see also Reny v. Sneed, 285 Ga. App. 722, 723-24 (2007) (explaining that where there is an offer to buy or sell and where the acceptance is dated after an offer has expired and there is nothing more to show that the offer remained open in order to be accepted at the later date or that the acceptance became a counter offer accepted by the offeror, there is no valid contract upon which an action for specific performance can be based); Robinson v. Tate, 217 Ga. 93 (1961).

     In this case, Plaintiff contends that she did not accept the purported severance agreement within the required seven-day period delineated by the purported agreement

because she did not return an executed agreement within seven days.  An acceptance of an offer takes effect from the time that it is sent.  O.C.G.A. § 13-3-3; <u>Security Life of Denver Ins. Co. v. Shah</u>, 906 F. Supp. 2d 1334, 1340 (S.D. Ga. Sept. 28, 2012); <u>Herring v. Dunning</u>, 213 Ga. App. 695, 699 (1994).  Thus, even if Plaintiff executed the contract on the third of August, as the contract indicates, assuming she did not send the executed contract to Defendants by August 3, 2015, the Defendants' offer would have lapsed and there would not be a valid contract, absent some sign of acceptance by Defendants.  The parties are in dispute as to whether there is such evidence here.  Plaintiff avers that Defendants never signed the agreement indicating their assent to be bound and did not pay the money required by the proposed agreement.  (Pl.'s Br. 8).  Under Plaintiff's theory of events, her execution of the severance agreement and subsequent untimely communication to Defendants would become a counter offer, which she maintains that she later rescinded.  (Am. Compl. ¶ 69).  Defendants respond that "ADCO attempted to perform under the contract."  (Def.'s Reply 4-5).

Accordingly, even if the Court were to consider the purported severance agreement, the Court would become mired in hotly disputed issues as to whether a contract formed and would be forced to consider further matters outside the pleadings. For instance, the Court would be forced to evaluate when the Plaintiff returned the executed severance agreement, whether Plaintiff imposed any additional conditions on her acceptance of the severance agreement, whether ADCO accepted an untimely offer by Plaintiff, whether the parties performed the terms of the purported severance

agreement, and whether Plaintiff had the capacity to enter into the severance agreement. Thus, at a minimum, Defendants' Motion to Dismiss should be adjudicated as a summary judgment motion to test Plaintiff's theories. However, this Court concludes that this is not an appropriate case for conversion to summary judgment at this early stage of the proceedings because the record has not yet been developed, the factual issues raised by Defendants' arguments are in dispute, neither party has had an opportunity to conduct discovery, and the relevant evidence regarding contract formation could be in possession of both parties. See, e.g., Frattallone v. Black Diamond Coating, Inc., No. 8:14-CV-2818-T-33TBM, 2015 WL 476193, at *2 (M.D. Fla. Feb. 5, 2015) (declining to convert motion to dismiss to summary judgment motion in order to consider defendants' defense that FLSA claims were barred by release agreement because the record was not yet developed and there were issues of fact as to whether settlement of overtime claim formed the essence of the agreement). Additionally, because adjudication of Defendants' arguments would require the Court's review of substantial matters outside the pleadings, Defendants' Motion to Dismiss should be **DENIED** as to Defendants' arguments regarding the purported severance agreement. Frattallone, 2015 WL 476193, at *2.

## C.    Plaintiff's Claims Pursuant to O.C.G.A. §§ 34-5-3 and 34-6A-2

In Count 6 of Plaintiff's Amended Complaint, she contends that Defendants violated O.C.G.A. § 34-5-3 when they paid her at a lower rate than her male counterparts even though they performed work which required equal skill, effort, and

responsibility under similar working conditions.  (Am. Compl. ¶ 147-49).  Plaintiff contends in Count 7, that Defendants discriminated against her on the basis of her disability in violation of O.C.G.A. § 34-6A-4 when they terminated her while on medical leave due to her disability.  (Am. Compl. ¶ 153).  Defendants contend that Plaintiff's claims pursuant to O.C.G.A. §§ 34-5-3 and 34-6A-4 should be dismissed because they are barred by the one year limitations period for such claims.  Plaintiff contends in response that the limitations periods for her state law claims should be tolled because her federal claims pursuant to the ADA and Equal Pay Act were not yet ripe during the state claims' respective limitations periods and if she timely filed her state law claims, her federal claims would be precluded.

Claims pursuant to O.C.G.A. § 34-5-3 may be "commenced no later than one year after the cause of action accrues." O.C.G.A. § 34-5-5.  Claims pursuant to O.C.G.A. § 34-6A-4 must be brought within 180 days after the alleged prohibited conduct occurred. O.C.G.A. § 34-6A-6.  Here, Plaintiff contends that she was terminated as of July 27, 2015.  (Am. Compl. ¶ 65).  Thus, Plaintiff's claims that she was terminated because of her disability and paid less than her male counterparts would have accrued by that time. Plaintiff did not file her original Complaint raising her pay discrimination claim pursuant to O.C.G.A. § 34-5-3 until January 2017, almost a year and a half after her termination.  Plaintiff did not raise her disability discrimination claim pursuant to O.C.G.A. § 34-6A-4 until she filed her Amended Complaint in April 2017, which was almost two years after her termination.  Accordingly, Plaintiff's claims pursuant to

22

O.C.G.A. § 34-6A-4 and O.C.G.A. § 34-5-3 were untimely filed.

Plaintiff argues, however, that the filing deadline should be equitably tolled on the grounds that had she timely filed her state law disability and equal pay claims, her federal claims would be precluded because she could not have exhausted her administrative remedies for her federal claims before the state law limitations period expired. This Court disagrees with Plaintiff that the possibility of claim preclusion provides a basis for equitable tolling of the state law claims' limitations periods. Claim preclusion bars the parties from litigating claims that were or *could have been litigated* in a prior action between the same parties. Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 892 (11th Cir. 2013). For purposes of evaluating claim preclusion, a claim could have been brought in a prior pleading if such claims were in existence at the time the original complaint was filed or at the time claims were actually asserted by supplemental pleadings or otherwise in the earlier action. De Souza v. JPMorgan Chase Home Lending Div., 608 F. App'x 776, 780 (11th Cir. 2015). The preclusion of claims that could have been brought does not include claims that arose after the original complaint was filed in the prior action. Sherrod v. Sch. Bd. of Palm Beach Cty., 272 F. App'x 828, 830-31 (11th Cir. 2008); Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir.1998). Claim preclusion applies if: (1) there is a final judgment on the merits of the first action; (2) the first decision is rendered by a court of competent jurisdiction; (3) the parties to both actions, or those in privity with them, are identical; and (4) the causes of action in both suits are identical. Griswold v. Cty. of Hillsborough, 598 F.3d 1289,

AO 72A
(Rev.8/82)

1292 (11th Cir. 2010).

The question then becomes whether claim preclusion could have barred Plaintiff's federal claims if she timely filed her state law equal pay and disability discrimination claims before she received her right to sue letter for her federal claims.  Filing the state law claims could theoretically preclude Plaintiff from subsequently filing her federal claims pursuant to similar theories if a final judgment was reached on the state law claims before her federal claims were filed.  Hooker v. Sec'y, U.S. Dep't of Veterans Affairs, 607 F. App'x 918, 922 (11th Cir. 2015) (noting that the Eleventh Circuit has previously held that a federal discrimination claim "can be barred by res judicata even if a plaintiff has not received a right to sue letter (thus exhausting his administrative remedies), so long as the facts giving rise to both claims were in existence at the time he filed suit"); Jang v. United Techs. Corp., 206 F.3d 1147, 1149 (11th Cir. 2000); O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1355-56 & n.15 (11th Cir. 2000) (explaining that, for purposes of evaluating res judicata, what matters is "identity of the factual circumstances" from which a plaintiff's claims arise and not whether the right to sue letter issued after the first suit was filed).  The Eleventh Circuit has held that plaintiffs "may not split causes of action to bring, for example, state law claims in one suit and then file a second suit with federal causes of action after receiving a 'right to sue letter.'" Jang, 206 F.3d at 1149.

The fact that Plaintiff's state law claims could be precluded if she had timely filed a lawsuit asserting her state law claims and subsequently filed a second lawsuit asserting

AO 72A
(Rev.8/82)

her federal claims after her right to sue letter issued, however, does not support the application of equitable tolling here.   Plaintiff could have timely filed her state law claims and avoided claim preclusion by seeking a stay of the lawsuit asserting her state law claims to await the conclusion of federal administrative proceedings, by filing her state law claims and then amending her complaint after obtaining a right to sue letter, or by contacting the EEOC to expedite the administrative process and/or to obtain a right-to-sue letter earlier.  <u>Czarniecki v. City of Chicago</u>, 633 F.3d 545, 551 (7th Cir. 2011); <u>Jang</u>, 206 F.3d at 1149.  Furthermore, Plaintiff does not present any authority for the proposition that under Georgia law, the limitations periods under O.C.G.A.§§ 34-5-5 and 34-6A-6 may be equitably tolled or that the circumstances of this case warrant equitable tolling of the limitations period.   Because Plaintiff's claims pursuant to O.C.G.A. § 34-6A-4 and O.C.G.A. § 34-5-3 are untimely and do not present a valid basis for equitable tolling, they should be **DISMISSED**.

### D.   Plaintiff's GINA Claim

Plaintiff initially argued in Count 3 of her Amended Complaint that ADCO violated GINA when Defendant Robert Adam conditioned his completion of her short-term disability form on her providing him with her genetic information.  (Am. Compl. ¶¶ 122-23).  Defendants argue in their Motion to Dismiss that Plaintiff fails to state a GINA claim because the allegations of her Amended Complaint do not suggest that ADCO requested her genetic information and she failed to file a timely charge of discrimination raising the issues pursuant to GINA.  After Defendants filed their Motion

to Dismiss Plaintiff's Amended Complaint, the parties stipulated to the dismissal of Plaintiff's GINA claim.  (Doc. 35).  Accordingly, Defendants' arguments for dismissal of Plaintiff's GINA claim are **MOOT**.

    **E.**    **Plaintiff's ADA Claims**

        1.    Regarded as Disabled

Plaintiff contends in Count 2 that ADCO discriminated against her on the basis of her perceived disability in violation of the ADA when ADCO terminated her while she was hospitalized for a cardiac incident and denied her a reasonable accommodation of time off and short-term disability benefits.  (Am. Compl. ¶ 115).  Defendants contend that Plaintiff fails to state disability discrimination claims because she failed to allege sufficient facts showing that she suffered from a disability or that ADCO perceived her as disabled.  In support, Defendants contend that Plaintiff has not alleged sufficient facts plausibly suggesting that she is disabled because she does not point to any specific or long-term health issue that was expected to be ongoing or to last more than six months. Plaintiff argues in response that she has plausibly alleged that Defendants regarded her as disabled because she asserts sufficient facts showing that her perceived disability involved a major life activity and was substantially limiting and significant.  In support, Plaintiff points out that she has alleged that her perceived disability involved a malfunction of her heart which caused her to be hospitalized.  (Am. Compl. ¶ 47). Finally, Plaintiff points out that she asserted in her Amended Complaint that "the Defendants . . . made it a habit to find a way to terminate certain employees who get

AO 72A
(Rev.8/82)

sick, become disabled, or are perceived as disabled by the Defendants." (Am. Compl. ¶ 50). Plaintiff argues that although Defendants label her condition as transitory or minor, heart conditions are seldom transitory or minor and even when they are controlled, they remain a chronic condition.

The ADA prohibits covered employers from discriminating based upon the known physical or mental impairments of a qualified individual with a disability. 42 U.S.C. § 12112. To state a claim for discrimination under the ADA, Plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of his disability. Id.; Chapman v. U.S. Postal Serv., 442 F. App'x 480, 484 (11th Cir. 2011); Alger v. Prime Rest. Mgmt., No. 1:15-CV-567-WSD, 2016 WL 3741984, at *7 (N.D. Ga. July 13, 2016); Townsend v. Staples, Inc., No. 1:15-CV-2835-WSD, 2016 WL 3344579, at *5 (N.D. Ga. June 15, 2016) (dismissing disability discrimination claim because plaintiff did not allege a specific disability or that she could do her job with or without reasonable accommodation). Thus, in order to state a claim under the ADA, the plaintiff must allege that he has a disability as defined in the Act. Chapman, 442 F. App'x at 484. In order to allege disability, a plaintiff must allege either: (1) that he has a physical or mental impairment that substantially limits one or more of his major life activities; (2) that there is a record of such an impairment; or (3) that he is regarded as having an impairment. 42 U.S.C. § 12102(1); Hilburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999).

Here, Plaintiff asserts that Defendants regarded her as having an impairment. An

AO 72A
(Rev.8/82)

individual is regarded as having an impairment if she establishes that she has been subjected to an unlawful employment action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). An individual will not be regarded as having an impairment if the impairment is transitory and minor. 42 U.S.C. § 12102(3)(B). A transitory impairment has an actual or expected duration of six months or less. Id. The ADA does not define what is meant by a minor impairment. Id.; Silk v. Bd. of Trs., Moraine Valley Cmty. Coll.,795 F.3d 698, 706 (7th Cir. 2015). Defendants may not defeat regarded as disabled disability claims by demonstrating that they subjectively believed the impairment was transitory and minor. Silk, 795 F.3d at 706 (citing 29 C.F.R. § 1630.15(f)); Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014). Instead, the defendant must prove that the perceived impairment actually was transitory and minor. Silk, 795 F.3d at 706 (citing 29 C.F.R. § 1630.15(f)).

The ADA regulations describe being transitory and minor as a defense to an ADA claim. Budhun, 765 F.3d at 259 (citing 29 C.F.R. § 1630.15(f)). Thus, Defendants bear the burden of proof on the defense, Plaintiff is not required to plead facts plausibly suggesting that the defense fails, and Plaintiff's ADA claim may be dismissed only if is apparent from the face of the Amended Complaint that her cardiac event was minor and transitory. Silk, 795 F.3d at 706 (providing that defendant has the burden of proving transitory and minor to defeat regarded as coverage); Budhun, 765 F.3d at 259

(explaining that being transitory and minor is an affirmative defense); Nevitt v. U.S. Steel Corp., 18 F. Supp. 3d 1322, 1332 & n.6 (N.D. Ala. 2014) (noting that the EEOC considers transitory and minor to be a defense and treating it as such); Mayorga v. Alorica, Inc., No. 12-21578-CIV, 2012 WL 3043021, at *8 (S.D. Fla. July 25, 2012); 29 C.F.R. § 1630.15(f); see also Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 872 (11th Cir. 2017) (explaining that because the statute of limitations is an affirmative defense, dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred); Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1225 n.8 (11th Cir. 2016) (explaining that normally the existence of an affirmative defense will not support a motion to dismiss, but that "in some cases, however, a complaint may be dismissed if an affirmative defense appears on the face of the complaint").

In this action, it is not apparent from the face of the Amended Complaint that Plaintiff's heart condition was transitory and minor. Plaintiff's Amended Complaint does not suggest a minor condition. Plaintiff states that she was hospitalized on July 14, 2015, for a "heart-related event" and that her physician advised that the condition was caused by work stress and advised that she take some time off from work. (Am. Compl. ¶¶ 47-48). Plaintiff also states that the condition spurred her to seek disability coverage from her employer. (Am. Compl. ¶¶ 52, 61). Thus, this Court cannot conclude at this juncture based on the allegations of the Amended Complaint, that Defendants' transitory and minor defense defeats Plaintiff's regarded as disabled disability claim. See, e.g.,

<u>Mayorga</u>, 2012 WL 3043021, at *9 & n.2 (concluding that the question of whether the plaintiff's impairment was minor and transitory was not properly resolved on a motion to dismiss because it could not be determined from the face of the complaint whether the impairment was minor).

> 2.   <u>Qualified to Perform the Essential Functions of the Job</u>

Defendants argue next that Plaintiff's disability claims fail because she does not plausibly allege that she was capable of performing the essential functions of her job as a Finance/Human Resources Manager during the period of disability.  Plaintiff argues in response that she could perform the essential functions of the job if she had been given the requested accommodation of some time off.  Neither party presents any authority addressing the central issue of whether or not a person who needs time off as an accommodation is capable of performing the essential functions of their job.

As noted above, to establish a prima facie case of discrimination under the ADA, Plaintiff must show she is a qualified individual.  42 U.S.C. § 12112.  To be a "qualified individual with a disability," a plaintiff must show (1) that she has a disability, and (2) that she can perform the essential functions of her position, with or without a reasonable accommodation for her disability.  42 U.S.C. § 12112(8); <u>Holbrook v. City of Alpharetta</u>, 112 F.3d 1522, 1526 (11th Cir. 1997).  In other words, the plaintiff, "must show either that [s]he can perform the essential functions of h[er] job without accommodation, or, failing that, show that [s]he can perform the essential functions of h[er] job with a reasonable accommodation." <u>Davis v. Fla. Power & Light Co.</u>, 205 F.3d

1301, 1305 (11th Cir. 2000).  The Eleventh Circuit has concluded that a "leave of absence might be a reasonable accommodation in some cases if it would allow an employee to continue to work in the immediate future." Billups v. Emerald Coast Util. Auth., No., — F. App'x —, 2017 WL 4857430, at *4-5 (11th Cir. Oct. 26, 2017) (internal quotation marks omitted) (citing Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003)).  A leave of absence, however, is not a reasonable accommodation "if it would only allow an employee to work at some *uncertain* point in the future." Id.; Santandreu v. Miami Dade Cty., 513 F. App'x 902, 905 (11th Cir. 2013) (explaining that "[w]hile a leave of absence may be a reasonable accommodation, the ADA does not require an employer to provide leave for an indefinite period of time because an employee is uncertain about the duration of his condition").

Here, Plaintiff fails to allege any facts tending to show that allowing her leave under the circumstances amounted to a reasonable accommodation which would allow her to perform the essential functions of her position.  Plaintiff asserts that her disability was a heart condition and represents that heart conditions are seldom transitory or minor and even if controlled, they are likely to re-present under certain circumstances. Plaintiff's Amended Complaint does not include any facts indicating the duration of the leave period she sought for her heart condition or whether she was seeking a defined or indefinite period of leave.  Additionally, Plaintiff did not include facts tending to show that if she received a limited leave period, she would be able to perform her job duties in the immediate future.  Plaintiff's assertions in her Amended Complaint that she is a

"qualified individual with a disability for the purposes of the ADA" does not assist her in plausibly pleading that she was able to perform the essential functions of her position. "Threadbare recitals of the elements of a cause of action . . . do not suffice" to give the claim facial plausibility as required by Bell Atl. Corp. v. Twombly, 550 U.S. 544(2007). Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (noting that the district court does not accept plaintiff's threadbare recitals of a cause of action's elements, supported by mere conclusory statements, as true). Because Plaintiff has not pled sufficient facts showing that she could perform the essential functions of her position with or without an accommodation, Plaintiff's disability discrimination claims under the ADA should be **DISMISSED**.

### F.    Plaintiff's Title VII Claim

Plaintiff contends in Count 1 that Defendant ADCO discriminated against her on the basis of her race and her gender in violation of Title VII when ADCO paid her less than her Caucasian male counterparts and terminated her. Defendants contend that Plaintiff fails to state a Title VII claim because she does not plead facts tending to show that an individual from outside of her protected racial and gender class was treated more favorably than she was. In support, Defendants contend that with respect to Plaintiff's wage discrimination claim, Plaintiff fails to point to a single comparator who was similarly situated and who was paid more than she was. Likewise, even though Plaintiff alleges that some white males were paid a one-time bonus higher than her bonus, she does not allege any facts showing that they were similarly situated, only that they were

all "management."  Plaintiff responds that she named her comparators when she alleged in her Amended Complaint that Nicole, a black female who worked in management, made $620 per week while the two men who reported to her, Byers and Davenport, earned $1,350 per week and $1,750 per week respectively.  (Am. Compl. ¶¶ 25-29). Plaintiff maintains that she alleged sufficient facts to show that they were similarly situated because she asserted in her Amended Complaint that their positions required equal skill, effort, and responsibility as Plaintiff's position and the comparators performed their jobs under similar working conditions.  (Am. Compl. ¶ 99).

> 1.   Wage Discrimination

To state a facially plausible Title VII disparate pay claim, a plaintiff must show that she occupies a job similar to the job of a higher-paid employee who is not a member of her protected class.  See Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992).  It is not necessary for the plaintiff and her comparators to have the same job title.  See Mulhall v. Advance Sec., Inc., 19 F.3d 586, 598, 600 (11th Cir. 1994) (comparing the plaintiff, a vice president, to her subordinates, who were project managers, and to a regional manager).  Rather, the relevant inquiry focuses on whether the plaintiff and the higher-paid comparator outside of the plaintiff's protected class perform substantially similar job duties.  Id. at 598 ("[T]he plaintiff [may] make a Title VII prima facie case on a showing that she is [a member of a protected class] and her job was substantially similar to higher paying jobs occupied by [individuals outside of her protected class].");  Miranda, 975 F.2d at 1529 (finding that the plaintiff had established

33

a prima facie case by proving that the type of duties she performed as a buyer were the same type of tasks the male buyers performed and for which the male buyers were paid more than the plaintiff).

In this case, Plaintiff fails to allege sufficient facts to make her disparate pay claim plausible.  Although Plaintiff names other white male members of the management team who received a larger bonus than she did, she fails to present any facts showing that their job duties were substantially similar.  Indeed, Plaintiff presents no facts tending to identify the other management members' responsibilities or to compare their duties to her own.  Plaintiff only ambiguously indicates that they were members of the management team.  Although Plaintiff alleges other female employees were not making as much as their male counterparts, Plaintiff's complaint fails to include any comparison of their job responsibilities.

Plaintiff also states in a conclusory fashion that her "comparators, who are the opposite sex and white," earned substantially more money than she did even though they "were working in positions . . . [requiring] equal skill, effort and responsibility as the Plaintiff and the comparators performed those jobs under similar working conditions." (Am. Compl. ¶¶ 98-100).  Plaintiff's statement in this regard is a threadbare legal conclusion and Plaintiff does not allege any specific facts supporting her theory.  Iqbal, 556 U.S. at 678-79 (noting that the district court does not accept plaintiff's threadbare recitals of a cause of action's elements, supported by mere conclusory statements, as true when evaluating a motion to dismiss).  Plaintiff suggests that she might be able to better

34

state a claim if she could take advantage of an opportunity to conduct discovery on the matter.  As the Supreme Court has explained, Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than legal conclusions.  Iqbal, 129 S. Ct. at 1950; Andrews v. City of Hartford, 700 F. App'x 924, 925 (11th Cir. 2017) (explaining that "[c]onclusory allegations do not unlock the doors of discovery for plaintiffs" and a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement").  Accordingly, Plaintiff's Title VII pay discrimination claims should be **DISMISSED**.

>>2.   Termination

To the extent that Defendants are also arguing Plaintiff's Title VII termination claims should be dismissed for failure to identify a similarly situated comparator, their argument fails.  To establish her prima facie case of race and/or gender discrimination, Plaintiff must show that (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her protected class more favorably or she was replaced by a person from outside her protected class.  Howard v. Oregon Television, Inc., 276 F. App'x 940, 942 (11th Cir. 2008); Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ. Ex rel. Univ. of S. Fla., 342 F.3d 1281, 1289 (11th Cir. 2003).  Furthermore, the prima facie case as set forth above is not rigid; if the plaintiff fails to show the existence of a similarly-situated employee, for instance, the plaintiff may put forward some other evidence showing a relationship between her race

35

and/or gender and the adverse action.  Vega v. Invesco Grp., Ltd., 432 F. App'x 867, 870 (11th Cir. 2011); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1092 (11th Cir. 2004) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate *where no other evidence of discrimination is present.*").

Here, Plaintiff has alleged sufficient facts plausibly suggesting that her termination occurred as a result of race discrimination because she alleges that she was terminated under suspicious circumstances and replaced by a Caucasian.  (Am. Compl. ¶ 62(b)).  First, Plaintiff alleges that she was terminated because the CPA found "several mistakes and omissions," but Plaintiff also alleges that Defendants had never made any negative comments about her work or included any discipline in her personnel file. (Am. Compl. ¶ 11).  Furthermore, based on the allegations of the Amended Complaint, it may be plausibly inferred that Defendant Robert Adam was aware that Plaintiff was not responsible for alleged mistakes or omissions at the time he fired her.  Plaintiff alleges that ADCO's accounting books from the previous years were not closed out, that ADCO's inventory had not been entered into the new accounting system Defendant began using two years prior to her arrival, and Defendant Robert Adam decided to alter employee records to exclude employees' overtime pay when ADCO was having difficulty making payroll.  (Am. Compl. ¶ 16).  Plaintiff further alleges she was instructed by Defendant Robert Adam to perform certain financial transactions secretly without his wife's knowledge. (Am. Compl. ¶¶ 13, 66).  Additionally, Plaintiff asserts

36

that Defendants instructed her to "guess at the numbers necessary for the production of financial reports."  (Am. Compl. ¶ 157).

Second, Plaintiff alleges Defendant Robert Adam informed her that she was being terminated because she enrolled herself into medical benefits in April of 2015 without telling him so that he could submit the proper paperwork to assure that deductions for medical benefits were taken from her paycheck.  (Am. Compl. ¶¶ 66, 79).  Plaintiff alleges that because she had worked for ADCO in an excess of ninety days, ADCO would be aware that she was eligible for the medical benefits, and in fact, Defendant Robert Adam was aware Plaintiff was attempting to obtain medical benefits because she told him she was experiencing difficulty in getting her medical benefits started, and in fact, he told her to handle the problem herself.  (Am. Compl. ¶¶ 66, 79, 82-83).  Furthermore, based on the facts of the Amended Complaint, it could be plausibly inferred that Defendant Robert Adam, the Chief Executive Officer who terminated Plaintiff, harbored discriminatory animus towards African Americans, because when he hired Plaintiff, he told her he should not hire her because "she was the *kind* that would sue me." (Am. Compl. ¶¶ 22).  Plaintiff understood Adam's alleged statement to mean that in Adam's mind, "there are two kinds of African-Americans, the kind who sue their employers and the kind who didn't."  (Am. Compl. ¶ 23).

Likewise, Plaintiff has alleged sufficient facts to plausibly suggest that her termination may have been triggered by gender discrimination.  In addition to the above facts, Plaintiff asserts several facts tending to show that Defendant Robert Adam

37

harbored discriminatory animus towards females. Plaintiff avers that Defendant Robert Adam has referred to women as "cackling hens," complained that all women do is "bitch, bitch, bitch," and remarked that women "keep a lot of shit stirred up." (Am. Compl. ¶ 39). Additionally, Plaintiff asserts facts tending to suggest that Defendant Robert Adam has expressed hostility towards women who have sought higher salaries, but has not done so when men have sought higher pay. For instance, when a female temporary employee sought to be hired at the rate of $70,000 per year, Adam became angry that she demanded such a high rate of pay and told Plaintiff to "get rid of her." (Am. Compl. ¶¶ 36-38). Additionally, Plaintiff avers that when a certain female employee requested a commission that was part of the compensation package to which the employee and Adam agreed when the employee was hired, Adam terminated her employment for insubordination. (Am. Compl. ¶ 32). Plaintiff avers that Adam has not reacted with anger when male employees or potential employees have demanded a higher rate of pay. (Am. Compl. ¶ 37). Accordingly, Plaintiff has alleged sufficient facts plausibly suggesting that ADCO discriminated against her on the basis of her race and gender when ADCO terminated her.

### G.   Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff argues Defendants intentionally inflicted emotional distress upon her when they discriminated against her, did not address her complaints of unequal treatment between employees of different races and different genders, and encouraged her to guess at numbers necessary for financial reports, placing her in jeopardy of

offending criminal laws.  Defendants argue Plaintiff fails to state a claim for intentional infliction of emotional distress because she fails to allege facts demonstrating that Defendants' actions were extreme or outrageous or that she suffered from severe stress. In response, Plaintiff contends that she has pleaded facts showing that Defendants engaged in intentional acts that would be extreme and outrageous to a reasonable person.  In support, Plaintiff asserts that (1) Defendants told her to predict an income statement rather than produce an accurate one and guess at the numbers necessary for the production of financial reports even though falsification of reports could cause her to incur criminal liability, (2) Defendants slanderously told Plaintiff's coworkers that she stole from the company; (3) Defendants caused Plaintiff's COBRA benefits to be withheld from her while she was under a doctor's care; and (4) Defendants did not address Plaintiff's complaints that the company was treating males and white employees more favorably.

To state a claim for intentional infliction of emotional distress under Georgia law, the plaintiff must show that the conduct was intentional or reckless; the conduct was extreme and outrageous; there is a causal connection between the conduct and the emotional distress; and that the emotional distress is severe.  Turnage v. Kasper, 307 Ga. App. 172, 183 (2010).  For a defendant's conduct to be extreme and outrageous, it must be so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Johnson v. Allen, 272 Ga. App. 861, 865 (2005); Turnbull v. Northside

Hosp., Inc., 220 Ga. App. 883, 884 (1996); Moses v. Prudential Ins. Co. of Am., 187 Ga. App. 222, 224 (1988).  In this regard, courts have found that "it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Phinazee v. Interstate Nationalease, Inc., 237 Ga. App. 39, 39-40 (1999).  Generally, Georgia law does not consider adverse employment actions "extreme or outrageous."  For example, an employer's "responsibilities to oversee the workplace and the employee's obligations to perform her duties [does not make the termination of an employee, for whatever reason, no matter how harsh or insensitive] so extreme as to go beyond all reasonable bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1229 (11th Cir. 1993) ("Georgia courts have held that an employer's termination of an employee-however stressful to the employee-generally is not extreme and outrageous conduct"); Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992) ("Even if the employee is not terminable at will, discharge for an improper reason does not constitute the egregious kind of conduct on which a claim of intentional infliction of emotional distress can be based."); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1331 (N.D. Ga. 2009); Perri v. Cingular Wireless, LLC, 397 F. Supp. 2d 1364, 1381-82 (N.D. Ga. 2005) (holding that alleged harassing conduct and termination was not sufficiently outrageous to constitute intentional

infliction of emotional distress); <u>Jarrard v. United Parcel Serv.</u>, 242 Ga. App. 58, 59-60 (2000).   Likewise, false accusations by an employer leading to the employee's termination and potential denial of employment benefits does not rise to the level of extreme outrage required to establish the tort under Georgia law.  <u>Harris v. Pierce Cty.</u>, No. CV 513-82, 2014 WL 3974668, at *18-19 (S.D. Ga. Aug. 14, 2014) (holding that employer's false accusations that employee was doing job improperly, repeating such allegations to the press, and termination of employee was not enough to amount to extreme and outrageous behavior); <u>Scott v. Shoe Show, Inc.</u>, No. 1:12-CV-3286-TWT--RGV, 2013 WL 1624286, at *4 (N.D. Ga. Mar. 13, 2013) (explaining that terminated employee did not state a claim for intentional infliction of emotional distress where employer falsely accused her of theft, continued to question her about store thefts even when she became visibly upset, coerced her into writing a false confession, and terminated her); <u>Palmer v. Stewart Cty. Sch. Dist.</u>, No. 4:04-CV-21 (CDL), 2005 WL 1676701, at *16 (M.D. Ga. June 17, 2005) (holding that employer's conduct was not sufficiently outrageous where employer terminated plaintiff's employment, falsely accused her of stealing from the company, caused her to "endure a humiliating battle to receive her unemployment benefits," and falsely charged her with computer theft, which led to her arrest); <u>Bd. of Pub. Safety v. Jordan</u>, 252 Ga. App. 577, 582 (2001) (finding that board accused of "fabricating cause" to justify public official's termination, tipping television news reporter about public official's alleged fiscal irresponsibility during a state-wide budgetary crisis, and denying him involuntary separation retirement benefits

was not sufficiently extreme and outrageous); <u>ComSouth Teleservs. v. Liggett</u>, 243 Ga. App. 446, 447 (2000) (rejecting emotional distress claim where employer allegedly intentionally represented to Department of Labor that plaintiff was terminated for cause to prevent her from receiving unemployment benefits, misrepresented her termination date in an effort to prevent her from collecting medical benefits (which the company subsequently paid), and portrayed her as a bad employee); <u>Lively v. McDaniel</u>, 240 Ga. App. 132, 134 (1999) (noting that false, defamatory statements that employee had stole and retained important documents belonging to the company as defamatory remarks are classic examples of conduct that, though harmful to the plaintiff, are not actionable as intentional infliction of emotional distress).  Because Plaintiff does not allege extreme and outrageous conduct, Plaintiff's intentional infliction of emotional distress claim should be **DISMISSED**.

## **CONCLUSION**

Based on the foregoing reasons, this Court **RECOMMENDS** that Defendants' Initial Motion to Dismiss Plaintiff's Complaint (Doc. 7), Defendants' Motion to Strike Paragraphs 32, 34, 48, 52, and 58 of Plaintiff's Complaint (Doc. 8), and Plaintiff's Motion to Strike Defendants' Attachment of Extraneous Evidence (Doc. 12) be **DEEMED MOOT**.  Plaintiff's subsequent Motion to Strike Defendants' Attachment of Extraneous Evidence and Motion for Leave to File a Sur-Reply is **DENIED**.  (Doc. 27, 32).  This Court also **RECOMMENDS** that Defendants' Second Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.  (Doc. 23).

AO 72A
(Rev.8/82)

**SO REPORTED AND RECOMMENDED**, this  27  day of December, 2017.


/s/ Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE