# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ANDREA NICOLE GREEN,

                 **Plaintiff,**

    v.

ADCO INTERNATIONAL
PLASTICS CORPORATION,
ROBERT ADAM, and LYNN AMY
ADAM,

                 **Defendants.**

**1:17-cv-337-WSD-LTW**

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Linda T. Walker's Non-Final Report and Recommendation [37] ("Non-Final R&R"). The Non-Final R&R recommends dismissing as moot: (1) Defendants ADCO International Plastics Corporation (ADCO), Robert Adam, and Lynn Amy Adam's (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint [7]; (2) Defendants' Motion to Strike [8]; and (3) Plaintiff Andrea Nicole Green's Motion to Strike Defendants' Attachment of Extraneous Evidence [12]. The Non-Final R&R also recommends that the Court grant in part and deny in part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [23]. Also before the Court is

Defendants' Objection to Magistrate Judge's Non-Final Report and

Recommendation [39] and Plaintiff's Reply to Defendants' Objection to

Magistrate Judge's Non-Final Report and Recommendation [40].

## I.    BACKGROUND[1]

A.    <u>Facts</u>

Defendant ADCO hired Plaintiff to work as a Finance/Human Resources

Manager, and she worked in this capacity for almost a year.  (Amended Complaint

[16] ¶¶ 8-10).  Plaintiff reported to Defendant Robert Adam as well as Dan

DeYoung.  (<u>Id.</u> ¶ 12).  Plaintiff states that at the time of hire, Defendant Robert

Adam told her that he should not hire her because she was the "kind that would sue

[him]."  (<u>Id.</u> ¶ 22).  Plaintiff understood Defendant Adam's statement to mean that

there were two kinds of African-Americans, "the kind who sue their employers and

the kind who didn't."  (<u>Id.</u> ¶ 23).

---

[1]    The parties have not objected to the facts set out in the Non-Final R&R, and finding no plain error, the Court adopts them.  For purposes of this Order, the Court takes the well-pleaded facts set forth in the Amended Complaint as true.  <u>See</u> <u>Chudasama v. Mazda Motor Corp.</u>, 123 F.3d 1353, 1367 (11th Cir. 1997); <u>Duke v.</u> <u>Cleveland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993) ("We must take the complaint's allegations as true and read them in the light most favorable to the plaintiffs.") (citation omitted).

Plaintiff contends that wages paid to employees did not reflect their length of tenure or quality of work, but were instead based on the employee's sex or race. (Id. ¶ 20). In support, Plaintiff avers that a black female management employee made $620 per week while the two men who reported to her earned $1,350 per week and $1,750 per week. (Id. ¶ 25). When Plaintiff advocated for underpaid female staff member Teresa Grizzell, who made less than her male comparators, Defendant Robert Adam told her that Ms. Grizzell "should be glad she has a job." (Id. ¶ 26). Plaintiff also complains that she initially received a $5,000 bonus, but Defendant Robert Adam took the bonus back and replaced it with a $400 bonus. (Id. ¶¶ 28-29). Meanwhile, white, male members of the management team made $6,000, $1,700, and $1,200 bonuses. (Id. ¶ 29). Plaintiff alleges that when a certain female employee requested a commission that was part of the compensation package to which the employee and Robert Adam agreed upon during the employee's hiring, Robert Adam terminated her employment for insubordination. (Id. ¶ 32). Ms. Grizzell filled the position during the interim, but although Defendant Robert Adam agreed that Grizzell had performed the position well, he did not want Grizzell to have the position because "she smokes and her breath stinks," "she is dumb," and she did "not always use proper grammar." (Id. ¶ 33). Instead, Robert Adam hired another female through a temporary service who was

beautiful, "dressed provocatively," and had fresh breath.  (Id. ¶ 35). When the

temporary employee sought to be hired at the rate of $70,000 per year, Defendant

Robert Adam became angry that she should demand such a high rate of pay and

told Plaintiff to "get rid of her."  (Id. ¶¶ 36-38).  Plaintiff also states that Defendant

Robert Adam has referred to women as "cackling hens," complained that all

women do is "bitch, bitch, bitch," and remarked that women "keep a lot of shit

stirred up."  (Id. ¶ 39).

Plaintiff states that in July 2015, while she was scheduled to be out of work

to care for her granddaughter who was recovering from surgery, another employee

advised Plaintiff that "Defendants" told ADCO employees that Plaintiff was

stealing from the company by making unauthorized purchases and keeping such

purchases for her personal use and that Defendant Robert Adam told employees

that Plaintiff would not be with ADCO much longer.  (Id. ¶¶ 44, 45).  Some

employees were aware, however, that Plaintiff had been authorized to make certain

purchases on behalf of the company for her personal use to assist her in performing

her job.  (Id. ¶ 62).

Before Plaintiff returned to work and returned the items to ADCO, she

suffered "a heart-related event" and was hospitalized.  (Id. ¶¶ 47, 62).  Plaintiff's

physician correlated her illness with stress suffered at work and advised her to take

some time off.  (Id. ¶ 48).  Plaintiff states that while she was on leave, Defendants slanderously accused her of stealing, terminated her, and replaced her with a white, female employee.  (Id. ¶ 62).  Plaintiff states that when a white male had a stroke, "Defendants treated him much better."  (Id. ¶ 51).

When Plaintiff attempted to make a claim against her employer-provided disability insurance policy, she discovered that the insurance had never gone into effect and that the premiums were not being removed from her paycheck.  (Id. ¶¶ 52-53).  Plaintiff maintains that Defendant Robert Adam was responsible for entering the deductions into the payroll system, but did not do so.  (Id. ¶ 53).  When Plaintiff brought the situation to Defendant Robert Adam's attention, he instructed her to "follow up on her own."  (Id. ¶ 54).  Plaintiff obtained the necessary paperwork from the insurer and gave the portion of the paperwork meant for the employer to Defendant Robert Adam.  (Id. ¶ 56).  The portion of the paperwork given to Robert Adam excluded medical information about Plaintiff. (Id. ¶ 56).  Defendant Robert Adam demanded the remainder of the application, but Plaintiff refused to show it to him on the grounds that the information in the remainder of the application included information protected by the Genetic Information Nondiscrimination Act of 2008.  (Id. ¶ 57).  Although Plaintiff

requested that Defendant Robert Adam complete the short-term disability paperwork on several occasions, Defendant Robert Adam did not do so.  (Id. ¶ 61).

Even though Defendants never criticized Plaintiff about her work or included any discipline in her personnel file, Defendant Robert Adam emailed Plaintiff a termination letter on July 27, 2015.  (Id. ¶¶ 11, 66).  In the letter, Adam explained that Plaintiff had been terminated because the CPA "found several mistakes and omissions" and that she failed to submit the proper paperwork to ensure that deductions for medical benefits had been taken from her paycheck.  (Id. ¶ 66).  When Defendant Robert Adam terminated Plaintiff, he offered her a severance agreement, which as part of its terms, required that she release her claims against ADCO.  (Id. ¶ 65).  According to Plaintiff, such agreements were not imposed on white, male employees who were terminated.  (Id. ¶ 68).  Plaintiff states that she attempted to negotiate the terms of the agreement but she never reached a meeting of the minds with ADCO.  (Id. ¶ 69).

Plaintiff subsequently sought COBRA benefits in order to extend her medical benefits.  (Id. ¶ 70).  Defendant ADCO denied Plaintiff COBRA coverage on the grounds that she had been terminated for "gross misconduct."  (Id. ¶ 75).  Defendant Robert Adam later asserted that Plaintiff had enrolled herself into medical benefits in April of 2015 without alerting him to start the payroll

deductions.  (Id. ¶ 79).  Plaintiff avers that according to her written offer of

employment, she was entitled to medical benefits after ninety days of employment,

and that Defendant Robert Adam was aware that she was receiving such benefits

because when she reported her difficulty with obtaining insurance benefits, he told

her to handle it herself.  (Id. ¶¶ 81-83).  Caucasian employees who left the

company were extended COBRA benefits.  (Id. ¶ 71).

B.    Procedural History

On January 29, 2017, Plaintiff filed a Complaint [1], alleging violations of

various federal employment laws.  Defendants moved to dismiss Plaintiff's

Complaint on March 31, 2017.  ([7]).  Defendants also moved to strike certain

paragraphs of Plaintiff's Complaint which they maintained were immaterial,

impertinent, or scandalous for the sole purpose of prejudicing Defendant Robert

Adam.  ([8]).  On April 14, 2017 Plaintiff moved to strike exhibits attached to

Defendants' Motion to Dismiss [12] and filed a Response to Defendants' Motion

to Dismiss [14].  One week later, Plaintiff filed her First Amended Complaint

[16].[2]

---

[2]      The Non-Final R&R recommends dismissing as moot the also-pending
Defendants Motion to Dismiss Plaintiff's Complaint [7] ("Initial Motion to
Dismiss"), Defendants' Motion to Strike [8], and Plaintiff's Motion to Strike
Defendants' Attachment of Extraneous Evidence [12].  The Magistrate Judge
found that Plaintiff properly amended her complaint after the Initial Motion to

In Count 1, Plaintiff alleges that Defendants discriminated against her on the basis of her race and gender when ADCO paid her less than her Caucasian male counterparts and terminated her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). In Count 2, Plaintiff alleges that Defendants violated the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq. ("the ADA") by discriminating against her on the basis of her perceived disability when they terminated her while she was hospitalized for a cardiac incident and denying her a reasonable accommodation of time off and short term disability benefits. In Count 3, Plaintiff alleges that ADCO violated the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff ("GINA") when Robert Adam conditioned his completion of her short term disability form on her providing him with her genetic information. In Count 4, Plaintiff asserts that Defendants violated 42 U.S.C. § 1981 of The Civil Rights Act when Defendants discriminated against her on the basis of her race by paying her less than her

---

Dismiss was filed, and that because the Initial Motion to Dismiss seeks to dismiss a superseded pleading it should be denied as moot. Likewise, the Magistrate Judge found that Defendants' Motion to Strike the original Complaint and Plaintiff's Motion to Strike Defendants' Attachment of Extraneous Evidence should be denied as moot. No party has filed objections regarding those recommendations. Finding no plain error, the Court adopts the Magistrate Judge's recommendation to dismiss as moot Defendants Motion to Dismiss Plaintiff's Complaint [7], Defendants' Motion to Strike [8], and Plaintiff's Motion to Strike Defendants' Attachment of Extraneous Evidence [12].

Caucasian counterparts and terminating her. Further in Count 4, Plaintiff asserts Defendants violated the Equal Pay Act of 1963, 29 U.S.C. § 206, as part of The Fair Labor Standards Act by willfully failing to pay her lawfully earned wages and paying her male counterparts more. In Count 5, Plaintiff alleges that Defendant ADCO violated the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 ("COBRA") when it caused COBRA benefits to be withheld from her while she was under a doctor's care because ADCO falsely informed the benefits administrator that Plaintiff was terminated for gross misconduct and ineligible for COBRA benefits. In Count 6, Plaintiff contends that Defendants violated O.C.G.A. § 34-5-3 when they paid her at a lower rate than her male counterparts even though they performed work which required equal skill, effort, and responsibility under similar working conditions. In Count 7, Plaintiff asserts that Defendants discriminated against her on the basis of her disability in violation of O.C.G.A. 34-6A-4 when they terminated her while she was on medical leave due to her disability. Finally, in Count 8, Plaintiff asserts Defendants intentionally inflicted emotional distress upon her when they discriminated against her, did not address her complaints of unequal treatment between employees of different races and different genders, and encouraged her to guess at numbers necessary for financial reports, placing her in jeopardy of offending criminal laws.

On May 5, 2017, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint [23]. Defendants' argue Plaintiff's claims should be dismissed because she executed a severance agreement releasing Defendants from any potential claims she may have arising out of her employment [23.2] ("Severance Agreement"). Defendants further contend that: (1) Plaintiff's claims pursuant to O.C.G.A. § 34-5-3 (Georgia's equal pay statute) and O.C.G.A. 34-6A-2 (Georgia's disability discrimination statute) should be dismissed because they have not been filed within their respective limitations periods; (2) Plaintiff fails to state a GINA claim because the allegations of her Amended Complaint do not suggest that ADCO requested her genetic information and she failed to file a timely charge of discrimination raising the issues pursuant to GINA; (3) Plaintiff fails to state an ADA claim because she failed to allege sufficient facts showing that she was capable of performing the essential functions of her position, that she suffered from a disability, or that ADCO perceived her as disabled; (4) Plaintiff fails to state a claim for intentional infliction of emotional distress because she fails to allege facts demonstrating that Defendants' actions were extreme or outrageous; and (5) Plaintiff fails to state a Title VII claim because she fails to plead facts tending to show that an individual from outside of her protected racial and gender class was treated more favorably than she was.

On December 27, 2017, the Magistrate Judge issued her Non-Final R&R [37]. The Magistrate Judge first concluded that the purported severance agreement should not be considered in connection with Defendants' Motion to Dismiss, noting that much of the information Plaintiff would need to defeat Defendants' arguments regarding the agreement (e.g. facts concerning whether there was a "meeting of the minds" and whether there was an acceptance before expiration of Defendant ADCO's offer) would include matters outside the pleadings. ([37] at 14-17).

With respect to Plaintiff's Title VII claims in Count 1, the Magistrate Judge concluded that Plaintiff failed to allege sufficient facts to make her disparate pay claim plausible. (Id. at 35). The Magistrate Judge further concluded that Plaintiff has alleged sufficient facts plausibly suggesting that her termination occurred as a result of race discrimination because she alleges that she was terminated under suspicious circumstances and replaced by a Caucasian. (Id. at 36). The Magistrate Judge also found that Plaintiff has alleged sufficient facts to plausibly allege that her termination may have been triggered by gender discrimination. (Id. at 37).

With respect to Count 2, the Magistrate Judge found that Plaintiff's disability discrimination claims under the ADA should be dismissed because Plaintiff failed

to plead sufficient facts showing that she could perform the essential functions of her position with or without an accommodation. (Id. at 32).

With respect to Count 3, the Magistrate Judge noted that the parties stipulated to the dismissal of Plaintiff's GINA, rendering Defendants' motion to dismiss that claim moot.

With respect to Count 6 and Count 7, the Magistrate Judge found that Plaintiff's O.C.G.A. § 34-6A-4 and O.C.G.A. § 34-5-3 claims were untimely filed and should not be equitably tolled. (Id. at 22-25).

With respect to Count 8, the Magistrate Judge concluded that Plaintiff's intentional infliction of emotional distress claim should be dismissed because Plaintiff does not allege extreme and outrageous conduct.

On January 10, 2018, Defendants filed their Objections to the Non-Final R&R. Defendants first argue that Plaintiff has waived her claims against each defendant pursuant to the severance agreement and that the Magistrate erred in not considering it. ([39] at 7). In particular, Defendants contend that "[t]he Agreement may be relied upon because its contents are alleged and integral to Plaintiff's Amended Complaint and . . . there is no dispute as to the Agreement's authenticity or the Plaintiff's signature thereon, which formed a valid contract." (Id.).

Defendants also object to the Magistrate Judge's finding that Plaintiff pled a valid claim under Title VII for termination on the basis of race or gender. (Id. at 15). Defendants argue that "on the face of Plaintiff's Amended Complaint, it is clear that Plaintiff was terminated for job performance reasons" and "[a]s a result, she has failed to state a prima facie case for race or gender discrimination." (Id.).

Defendants do not otherwise object to the Non-Final R&R. Plaintiff did not assert any objections to the Non-Final R&R.

## II.    LEGAL STANDARDS

### A.    Review of a Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Jeffrey S. by Ernest S v. State Bd. of Educ. Of State of Ga., 896 F.2d 507, 512, 513 (11th Cir. 1990). The portions of the R&R to which there is no objection are reviewed for plain error. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

B. <u>Standard on a Motion to Dismiss</u>

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." <u>Wooten v. Quicken Loans, Inc.</u>, 626 F.3d 1187, 1196 (11th Cir. 2010). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." <u>Aldana v. Del Monte Fresh Produce, N.A.</u>, 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting <u>S. Fla. Water Mgmt. Dist. v. Montalvo</u>, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true. <u>See</u> <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1290 (11th Cir. 2010) (construing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. <u>Twombly</u>, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

## III. DISCUSSION

### A. Sections of the R&R to Which a Party Objects

The Court conducts a *de novo* review of those portions of the Non-Final R&R to which Defendants object. 28 U.S.C. § 636(b)(1)(C). Defendants argue that the Non-Final R&R incorrectly found that: (1) the alleged Severance Agreement could not be considered on a motion to dismiss; and (2) Plaintiff pled Title VII claims for race and gender discrimination. The Court addresses each of these claims in turn.

#### 1. The Severance Agreement

Defendants contend that Plaintiff has waived her claims against each Defendant pursuant to the Severance Agreement Plaintiff signed on August 3, 2015. The alleged Severance Agreement purports to "release and hold ADCO harmless from any claims you might have arising out of [Plaintiff's] employment with the Company and the termination of [her] employment." ([23.2]).

The Magistrate Judge found that the Severance Agreement should not be considered in connection with the Defendants' Motion to Dismiss. ([37] at 14). In making this finding, the Magistrate Judge noted that "[t]he Court may, in its discretion, consider extrinsic documents which are central to the plaintiff's claims on a motion to dismiss if the plaintiff does not challenge the authenticity of the document." (Id.). The Magistrate Judge concluded, however, that "the present case does not present appropriate circumstances for the Court's exercise of discretion to review of [sic] the purported severance agreement in connection with Defendants' Motion to Dismiss." (Id. at 15). The Magistrate Judge found that: (1) the Amended Complaint did not contain enough pertinent factual allegations to evaluate Defendants' arguments concerning Plaintiff's alleged release of her claims; (2) consideration of the Severance Agreement would not be appropriate because evaluation of whether it is a valid and enforceable contract would require information beyond what is available in the Amended Complaint and the Severance Agreement itself (e.g. Plaintiff's capacity to enter an agreement, Defendants' acceptance of Plaintiff's counteroffer, and whether there was a "meeting of the minds"); and (3) it would be improper to convert Defendants' Motion to Dismiss to a summary judgment motion because the record has not yet been fully developed and disputed facts exist. (Id. at 20-21). For these reasons,

the Magistrate Judge recommended denying Defendants' Motion to Dismiss based on the Severance Agreement.

Defendants object to the Magistrate Judge's recommendation on the grounds that the Severance Agreement meets the two-pronged test for "incorporation by reference" and should be considered in ruling on the Defendants' Motion to Dismiss. ([39] at 12). In particular, the Defendants argue that the Severance Agreement is: (1) central to the plaintiff's claim; and (2) undisputed (i.e. the authenticity of the document is not challenged). (Id. at 9-10, citing Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir.1999). Defendants further argue that the Court "may consider documents attached to a defendant's motion if those documents are 'relationship-forming contracts [that] are central to a plaintiff's claim.'" Sampson v. Washington Mut. Bank, 453 F. App'x 863, 866 (11th Cir. 2011) (quoting SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). The Defendants argue that the "the Recommendation blurs the distinction between a challenge to the authenticity of a document and a challenge to matters outside of the four corners of the document." ([39] at 12). The Defendants assert that the Magistrate Judge's focus on the Plaintiff's challenges to the validity and enforceability of the Severance Agreement "obscures the fact that Plaintiff does not challenge its authenticity" and constitutes "a

collateral attack on the document which fails under established Eleventh Circuit law." (Id.).

The Court agrees with the Magistrate Judge and declines to exercise its discretion to consider the Severance Agreement in ruling on the Defendants' Motion to Dismiss.  As noted by the Magistrate Judge, "Defendants' argument that Plaintiff had released all of her claims arising out of her employment is an affirmative defense; thus, Plaintiff was not required to plead facts in her Amended Complaint to defeat such a defense."  ([37] at 16, citing Perry v. Merit Sys. Prot. Bd., 137 S. Ct. 1975, 1987 n.9 (2017) (explaining that "in civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading"); Rakip v. Paradise Awnings Corp., 514 F. App'x 917, 920 (11th Cir. 2013) (noting that release is an affirmative defense); Watts v. City of Opelika, No. 3:13-CV-742-MHT-PWG, 2015 WL 7450407, at *8 (M.D. Ala. Aug. 26, 2015) (noting that applicability of a release agreement is an affirmative defense and party seeking to enforce such an agreement bears the burden of proof); Fed. R. Civ. P. 8(c)(1)).  To the extent, if any, that the Complaint refers to the signed Severance Agreement, it characterizes the Severance Agreement as part of a counteroffer from Plaintiff that was rescinded.  ([16] at ¶¶ 65, 68, 69).  On a motion to dismiss, the Court is obligated

to "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten, 626 F.3d at 1196. That the Plaintiff has also raised numerous challenges to the validity and enforceability of the Severance Agreement that involve questions of fact not addressed in the pleading provides additional grounds for declining to exercise the Court's discretionary authority to consider the Severance Agreement at this stage.

Defendants' Objection on this basis is overruled, and its Motion to Dismiss on this basis is denied. See Wells Fargo Bank, N.A. v. Thomas, No. 3:10-CV-92-TWT, 2011 WL 13234702, at *5 (N.D. Ga. Mar. 16, 2011) (declining to grant judgment on the pleadings as to the affirmative defenses of waiver and release).

### 2.    Title VII Claims for Race and Gender Discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against an employee because: (1) "[s]he has opposed any practice made an unlawful employment practice by [Title VII]," or (2) "[s]he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).

To state a claim under Title VII, a plaintiff must prove that the defendant acted with discriminatory intent.  Hawkins v. Ceco Corp., 883 F.2d 977, 980-81 (11th Cir. 1989); Bernstein v. Ga. Dep't of Educ., 970 F. Supp. 2d 1340, 1355 (N.D. Ga. 2013).  A plaintiff can support her claim with direct or circumstantial evidence.  Dixon v. The Hallmark Cos., 627 F.3d 849, 854 (11th Cir. 2010); EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002).

To establish her prima facie case of race and/or gender discrimination, Plaintiff must show that (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her protected class more favorably or she was replaced by a person from outside her protected class. Howard v. Oregon Television, Inc., 276 F. App'x 940, 942 (11th Cir. 2008); Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ. Ex rel. Univ. of S. Fla., 342 F.3d 1281, 1289 (11th Cir. 2003).  Furthermore, the prima facie case as set forth above is not rigid; if the plaintiff fails to show the existence of a similarly-situated employee, for instance, the plaintiff may put forward some other evidence showing a relationship between her race and/or gender and the adverse action. Vega v. Invesco Grp., Ltd., 432 F. App'x 867, 870 (11th Cir. 2011); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1092 (11th Cir. 2004) ("If a plaintiff fails to show

the existence of a similarly situated employee, summary judgment is appropriate *where no other evidence of discrimination is present.*" (emphasis in original)).

The Magistrate Judge found that "Plaintiff has alleged sufficient facts plausibly suggesting that her termination occurred as a result of race discrimination because she alleges that she was terminated under suspicious circumstances and replaced by a Caucasian." ([37] at 36). In making this finding the Magistrate Judge found that Plaintiff alleged sufficient facts to plausibly infer that Defendant Robert Adam was aware that Plaintiff was not responsible for the alleged mistakes and omissions cited as reasons for Plaintiff's termination. (Id. at 36-37). The Magistrate Judge further found that "based on the facts of the Amended Complaint, it could be plausibly inferred that Defendant Robert Adam, the Chief Executive Officer who terminated Plaintiff, harbored discriminatory animus towards African Americans . . .." (Id., citing Am. Compl. ¶¶ 22, 23). The Magistrate Judge also found that "Plaintiff asserts several facts tending to show that Defendant Robert Adam harbored discriminatory animus towards females" and "expressed hostility towards women who have sought higher salaries, but has not done so when men have sought higher pay." (Id., citing Am. Compl. ¶¶ 32, 36-39. For these reasons, the Magistrate Judge recommended denying Defendants' Motion to Dismiss Plaintiff's Title VII race and gender discrimination claims.

Defendants object to the Magistrate Judge's recommendation on the grounds that "on the face of Plaintiff's Amended Complaint, it is clear that Plaintiff was terminated for job performance reasons" and, "[a]s a result, she has failed to state a prima facie case for race or gender discrimination." ([39] at 15). The Defendants argue that "[b]y Plaintiff's own allegations, she was terminated in part because of several 'mistakes and omissions' that Defendant ADCO's accountant found upon an audit of Defendant's books." (Id.). The Defendants further argue that "the Recommendation fails to note that Plaintiff's race and gender allegations as stated in the Amended Complaint do not establish a link, causal nexus, or, at times, even a logical connection to her termination" and those allegations "do not even relate to discriminatory conduct." (Id. at 16). The Defendants contend that Plaintiff failed to carry her burden to allege a nexus between her [gender and race] allegations and her termination. (Id.)

The Court finds that Plaintiff alleged sufficient facts plausibly suggesting that her termination occurred as a result of race and gender discrimination when assuming all the factual allegations in the complaint are true and giving the Plaintiff the benefit of reasonable factual inferences. The Court agrees with the Magistrate Judge that the Amended Complaint plausibly alleges that her termination was the result of Defendant Robert Adam's racial and gender animus

and not the mistakes and omissions cited as grounds for termination, especially considering that Plaintiff alleged facts from which one can reasonably infer that Defendant Robert Adam was aware that Plaintiff was not responsible for those mistakes and omissions. Defendants' Objection on this basis is overruled, and its Motion to Dismiss on this basis is denied.

B.    <u>Sections of the R&R to which No Party Objects</u>

No party submitted objections to the remainder of the Non-Final R&R. The Court thus conducts a plain error review of the remainder of the Magistrate Judge's findings and recommendations. <u>See</u> <u>Slay</u>, 714 F.2d at 1095.

The first claim the Court reviews for plain error is Plaintiff's wage discrimination claim under Title VII (portion of Count 1). To state a facially plausible Title VII disparate pay claim, a plaintiff must show that she occupies a job similar to the job of a higher-paid employee who is not a member of her protected class. <u>See</u> <u>Miranda v. B&B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1529 (11th Cir. 1992). The Magistrate Judge concluded that Plaintiff fails to allege sufficient facts to make her disparate pay claim plausible. ([37] at 34). The Magistrate Judge found that "[a]though Plaintiff names other white male members of the management team who received a larger bonus than she did, she fails to present any facts showing that their job duties were substantially similar." (<u>Id.</u>).

The Court agrees. Plaintiff's conclusory allegation that her "comparators, who are the opposite sex and white," earned substantially more money than she did even though they "were working in positions . . . [requiring] equal skill, effort and responsibility as the Plaintiff and the comparators performed those jobs under similar working conditions" ([16] ¶¶ 98-100) is insufficient. Iqbal, 556 U.S. at 678-79 (noting that the district court does not accept plaintiff's threadbare recitals of a cause of action's elements, supported by mere conclusory statements, as true when evaluating a motion to dismiss). The Court finds no plain error in the Magistrate Judge's decision, and adopts the Magistrate Judge's recommendation to dismiss Plaintiff's Title VII wage discrimination claim. See Slay, 714 F.2d at 1095.

The next claim the Court reviews for plain error is Count 2, Plaintiff's allegation that Defendants violated the ADA by discriminating against her on the basis of her perceived disability. The ADA prohibits covered employers from discriminating based upon the known physical or mental impairments of a qualified individual with a disability. 42 U.S.C. § 12112. To state a claim for discrimination under the ADA, Plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of his disability. Id.; Chapman v. U.S. Postal Serv., 442 F. App'x 480,

484 (11th Cir. 2011). To be a "qualified individual with a disability," a plaintiff must show (1) that she has a disability, and (2) that she can perform the essential functions of her position, with or without a reasonable accommodation for her disability. 42 U.S.C. § 12112(8); Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 (11th Cir. 1997). The Magistrate Judge found that Plaintiff failed to plead sufficient facts showing that she could perform the essential functions of her position with or without an accommodation. (Id. at 32). The Court agrees. Plaintiff fails to allege any facts (1) tending to show that allowing her leave under the circumstances amounted to a reasonable accommodation which would allow her to perform the essential functions of her position, (2) indicating the duration of the leave period she sought for her heart condition or whether she was seeking a defined or indefinite period of leave, or (3) tending to show that if she received a limited leave period, she would be able to perform her job duties in the immediate future. The Court finds no plain error in the Magistrate Judge's decision, and adopts the Magistrate Judge's recommendation to dismiss Plaintiff's ADA claims. See Slay, 714 F.2d at 1095.

The Court finds no plain error in the Magistrate Judge's recommendation to dismiss Plaintiff's GINA claim (Count 3) in view of the parties' stipulated dismissal of that claim.

The next claim the Court reviews for plain error is Plaintiff's contentions in Count 6 and Count 7 that Defendants violated O.C.G.A. § 34-5-3 and O.C.G.A. 34-6A-4. Claims pursuant to O.C.G.A. § 34-5-3 may be "commenced no later than one year after the cause of action accrues." O.C.G.A. § 34-5-5. Claims pursuant to O.C.G.A. § 34-6A-4 must be brought within 180 days after the alleged prohibited conduct occurred. O.C.G.A. § 34-6A-6. The Magistrate Judge concluded that Plaintiff's O.C.G.A. § 34-6A-4 and O.C.G.A. § 34-5-3 claims were untimely filed and should not be equitably tolled. (Id. at 22-25). The Court agrees. Plaintiff contends that she was terminated as of July 27, 2015. ([16] ¶ 65). Plaintiff did not file her original Complaint raising her pay discrimination claim pursuant to O.C.G.A. § 34-5-3 until January 2017, almost a year and a half after her termination. Plaintiff did not raise her disability discrimination claim pursuant to O.C.G.A. § 34-6A-4 until she filed her Amended Complaint in April 2017, which was almost two years after her termination.

The Magistrate Judge further concluded that the deadline for filing Plaintiff's O.C.G.A. § 34-5-3 and O.C.G.A. § 34-6A-4 claims should not be equitable tolled. The Court agrees. Plaintiff does not cite any authority holding that the limitations periods under O.C.G.A.§§ 34-5-5 and 34-6A-6 may be equitably tolled, much less under the circumstances of this case. The Court finds

no plain error in the Magistrate Judge's decision, and adopts the Magistrate Judge's recommendation to dismiss Plaintiff's O.C.G.A. § 34-5-3 and O.C.G.A. § 34-6A-4 claims.  See Slay, 714 F.2d at 1095.

The next claim the Court reviews for plain error is Plaintiff's claim in Count 8 for intentional infliction of emotional distress.  To state a claim for intentional infliction of emotional distress under Georgia law, the plaintiff must show that the conduct was intentional or reckless; the conduct was extreme and outrageous; there is a causal connection between the conduct and the emotional distress; and that the emotional distress is severe.  Turnage v. Kasper, 307 Ga. App. 172, 183 (2010).  For a defendant's conduct to be extreme and outrageous, it must be so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Johnson v. Allen, 272 Ga. App. 861, 865 (2005).  "[I]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."  Phinazee v. Interstate Nationalease, Inc., 237 Ga. App. 39, 39-40 (1999).  The Magistrate Judge concluded that this claim should be dismissed because Plaintiff does not allege

extreme and outrageous conduct. ([37] at 41). The Court agrees. Generally, Georgia law does not consider adverse employment actions "extreme or outrageous." See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1229 (11th Cir. 1993) ("Georgia courts have held that an employer's termination of an employee-however stressful to the employee-generally is not extreme and outrageous conduct"); Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992) ("Even if the employee is not terminable at will, discharge for an improper reason does not constitute the egregious kind of conduct on which a claim of intentional infliction of emotional distress can be based."); Scott v. Shoe Show, Inc., No. 1:12-CV-3286-TWT--RGV, 2013 WL 1624286, at *4 (N.D. Ga. Mar. 13, 2013) (explaining that terminated employee did not state a claim for intentional infliction of emotional distress where employer falsely accused her of theft, continued to question her about store thefts even when she became visibly upset, coerced her into writing a false confession, and terminated her). The Court finds no plain error in the Magistrate Judge's decision, and adopts the Magistrate Judge's recommendation to dismiss Plaintiff's intentional infliction of emotional distress claim. See Slay, 714 F.2d at 1095.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Linda T. Walker's Non-Final Report and Recommendation [37] is **ADOPTED** and Defendants' Objections [39] to the R&R are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [23] is **GRANTED IN PART and DENIED IN PART**. Defendants' motion to dismiss is **GRANTED** with respect to Plaintiff's Title VII wage discrimination claim (part of Count I); **GRANTED** with respect to Plaintiff's ADA claims (Count 2); **GRANTED** with respect to Plaintiff's claims pursuant to O.C.G.A. § 34-6A-4 and O.C.G.A. § 34-5-3 (Count 6 and Count 7); **GRANTED** with respect to Plaintiff's intentional infliction of emotional distress claim (Count 8); **DENIED** with respect to Defendants' argument that the Severance Agreement bars all claims; and **DENIED** with respect to Plaintiff's discriminatory termination claim under Title VII (part of Count 1).

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [7] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike [8] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff Andrea Nicole Green's Motion to Strike Defendants' Attachment of Extraneous Evidence [12] is **DENIED AS MOOT**.

**SO ORDERED** this 7th day of February, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE